**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO: 1:24-cv-23943**

**WESLYNE LEWIS FRANCOIS**,

Plaintiff,

vs.

**THE CITY OF MIAMI**,
a municipal corporation authorized to do
business under the laws of the State of Florida

Defendants.
_______________________________________/

# COMPLAINT

Plaintiff, **WESLYNE LEWIS FRANCOIS** ("**LEWIS FRANCOIS**"), files this Complaint and sues the Defendant, **CITY OF MIAMI** ("**CITY**"), for violations of Title VII of the Civil Rights Act of 1964; Title 42 United States Code Section 2000 et seq, based on race, ethnicity, and retaliation, and states as follows:

## JURISDICTION

1. This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. §1337, Title VII of the Civil Rights Act of 1964, Title 42, United States Code, Section 2000e-16 and Title 42 United States Code, Section 1983.

## CONDITIONS PRECEDENT

2. All conditions precedent have been met, waived, or otherwise excused. Plaintiff

FRANCOIS filed a timely Complaint with the EEOC and received a Right to Sue Letter followed by the timely initiation of this lawsuit.

**VENUE**

3. Venue is proper in the United States District Court for the Southern District of Florida, in that the Plaintiff was employed by the City of Miami, Florida, which is located in Miami-Dade County, Florida, and all of the acts of discrimination took place in this jurisdiction.

**PARTIES**

4. The City is a duly Chartered Florida Municipal Corporation in the State of Florida, and at all times material was engaged in business in Miami-Dade County, Florida.
5. Plaintiff is a City of Miami Police officer and resides in Miami-Dade County, Florida.
6. At all times material, City is and at all times was the employer of the Plaintiff within the meaning of Title VII of the Civil Rights Act of 1964.

**INTRODUCTION**

7. This is an action seeking damages in excess of One Million Dollars ($1,000,0000.00) and other relief by an 18+ year employee of the CITY OF MIAMI who was subjected to a hostile work environment and discrimination because of her race and ethnicity (Black Haitian-Bahamian American female) and retaliation because she filed an EEOC Complaint.

8. The Plaintiff has retained the services of the undersigned attorney and is obligated to pay reasonable attorneys' fees and costs associated with this action.

## THE FACTS

9. WESLYNE LEWIS FRANCOIS is an eighteen (18) year sworn employee of the City of Miami Police Department, having transitioned from a civilian temporary role from the United States Military.
10. LEWIS FRANCOIS became a sworn officer to contribute positively to the community she was raised in and has documented success in working with diverse communities.
11. During her tenure, she has risen through the ranks, obtaining her last promotion in January 2020 as a Police Commander.
12. Plaintiff LEWIS FRANCOIS has received illegal, unethical, unprofessional, biased, unfair, hostile, and corrupt practices occurring at the Miami Police Department under the leadership of Chief Manuel Morales (white Hispanic male) and his Executive Staff.
13. LEWIS FRANCOIS has had no issues with previous Chiefs of Police and has had a respectable working relationship until Chief Morales became Interim Chief.
14. Chief Morales has disrespected LEWIS FRANCOIS as a subordinate and insulted her as a Black Haitian-Bahamian woman.
15. In February 2020, after LEWIS FRANCOIS was promoted to Commander, Chief Morales criticized her hairstyle after discovering a photo of her on social media, claiming she needed to "tone" down her look as it would not be accepted by the Coconut Grove community, despite it not violating any departmental policy and not affecting her job performance.

16. Chief Morales compared LEWIS FRANCOIS' hairstyle to another Black female Commander, Bianca Joseph, indicating a lack of professionalism and an attempt to impose conformity.

17. Chief Morales actions were aimed at undermining the identities of Black women, reinforcing a narrative of superiority that positioned them as lesser individuals.

18. Plaintiff objected to Chief Morales' behavior and informed him that he and the City were violating Title VII and other anti-discrimination laws.

19. After becoming Interim Chief, Morales targeted LEWIS FRANCOIS for negative evaluations, unwarranted disciplinary actions, and had her placed on a 90-day performance improvement plan aimed at setting her up for failure.

20. From October 14, 2021, to November 12, 2021, Interim Chief Morales maintained the professional relationship LEWIS FRANCOIS had come to know throughout her career, frequently reaching out to her via telephone and text to discuss specific concerns.

21. On November 8, 2021, Interim Chief Morales informed LEWIS FRANCOIS that he would be attending a Veteran's Day event in her area. LEWIS FRANCOIS notified him that she would be out of town but assured him her personnel would be present. He acknowledged her absence and wished her well. She ensured proper notifications were made for her time off, and an 'out of office' notice was circulated to the entire Executive Staff.

22. On November 12, 2021, LEWIS FRANCOIS' career changed significantly. While she was away, she received a call from Enrique Chavez (white Hispanic male), the Executive Officer at that time who responded directly to Interim Chief Morales.

23. At approximately 1:00 PM, Chavez requested an Honor Guard Detail for the following day, which was less than 24 hours' notice.

24. The detail was for the swearing-in of Commissioner Joe Carollo at City Hall.
25. LEWIS FRANCOIS informed Chavez that fulfilling the request on such short notice would be difficult. Chavez replied, stating, “Morales doesn't care, make it happen.”
26. FRANCOIS suggested utilizing the Miami Fire Rescue's team, as it had been done in the past per Chief Morales directives when there was a staffing shortage.
27. At approximately 2:31 PM, Officer Chavez contacted LEWIS FRANCOIS via text, thanking her and mentioning that “Chief was not happy.”
28. At approximately 3:11 PM, Interim Chief Morales texted LEWIS FRANCOIS asking, “u here,” to which she responded that she was not, a fact he was already aware of via out of office notification previously sent.
29. Morales then texted, “ok gonna send invite for next week to sit down we need to iron out some things - effective immediately Lt. Rojas (a white / Hispanic male) will handle all honor guard duties - I will send an email to the members in a few.”
30. An invitation was sent on Sunday, November 14, 2021, for a meeting with Chief Morales scheduled for Tuesday, November 16, 2021, at 4 PM.
31. On Tuesday, November 16, 2021, LEWIS FRANCOIS attended an awards ceremony for the Miami Police at the Miami Police College Auditorium.
32. After the ceremony concluded at approximately 11 AM, Interim Chief Morales yelled across the auditorium, “Weslyne, meet me in my office, I got time for you now!”. Plaintiff was publicly humiliated.
33. LEWIS FRANCOIS responded to the Chief's conference room as instructed.
34. Upon her arrival, Interim Chief Morales's first words to her were, “What is your problem?”
35. This was the first time Interim Chief Morales had addressed LEWIS FRANCOIS in such

a manner, leaving her confused about what warranted this treatment.

36. For the next hour, Interim Chief Morales employed various tactics to discredit LEWIS FRANCOIS, including her job performance, tenure, commitment, and reputation, without any evidence or justification.

37. LEWIS FRANCOIS endured what she perceived as an abuse of power, filled with lies and unsupported statements.

38. Morales attempted to address alleged issues that had arisen over the past two years, many of which had never previously been a concern.

39. Following the incident with Interim Chief Morales, LEWIS FRANCOIS was ostracized by most of the Executive Staff and those close to Morales as rumors circulated that she had "cussed him out."

40. Chief Morales sent various members of his staff to "persuade" LEWIS FRANCOIS to apologize to him or face consequences.

41. Chief Morales embarked on a 10-month campaign to discredit and humiliate LEWIS FRANCOIS and create a situation that would force her to apologize for his wrongdoings or result in her demotion.

42. Many staff members were reluctant to assist LEWIS FRANCOIS and hesitated to participate in the unfair treatment, while others sought to prove their loyalty to Morales in a hostile work environment created by him.

43. LEWIS FRANCOIS requested that the entire Executive Staff be interviewed regarding the situation to address the incident as well as the hostile work environment.

44. On December 22, 2021, LEWIS FRANCOIS met with Assistant Chief Carroll (white male) and Major Eric Gonzalez (white Hispanic male) in Chief Carroll's office at headquarters.

45. During the meeting, Chief Carroll stated, “This is one of the worst things he had to do but had no choice.” On that day, LEWIS FRANCOIS was issued a reprimand for failing to respond to an incident on December 11, 2021.

46. LEWIS FRANCOIS was unable to respond to the incident due to an injury, while other members of the Executive Staff, including now-Major Daniel Garrido (white Hispanic male), who were also on duty that day, did not respond.

47. LEWIS FRANCOIS had kept her team, superiors, executive staff and Chief Morales informed of the steps she was taking regarding the incident.

48. Despite providing her supervisor with medical documentation, LEWIS FRANCOIS received a reprimand, while Major Garrido faced no consequences. Chief Carroll remarked, “Wes, we know what this is about, let's just make this go away. You know he is not going to stop!” indicating that Morales was determined to abuse his authority and undermine LEWIS FRANCOIS by any means necessary.

49. From Monday, December 27, 2021, to Wednesday, January 12, 2022, LEWIS FRANCOIS was out of the office due to COVID-19. During this time, staff changes occurred, with Major Um Set Ramos (white Hispanic male) becoming the Plaintiff’s direct supervisor and Assistant Chief Cherise Gause assigned to the Field Operations Division.

50. Major Um Set Ramos began questioning LEWIS FRANCOIS about her community events, suggesting she was mismanaging her resources.

51. This same Major had allegedly been recorded using the “N word” when a Black man was struck by a UPS truck. Major Ramos was subsequently sustained by the City of Miami’s Civilian Investigative Panel for his misconduct related to this incident as they publicly recommended his termination for his racial comments.

52. On Thursday, January 20, 2022, at the direction of Interim Chief Morales, LEWIS FRANCOIS attended a meeting at the Miami-Dade College Gibson Center with various members of the Coconut Grove Ministerial Alliance.

53. Pastor Nathaniel Robinson, who led the meeting, could not articulate any reasons for his sudden issues with LEWIS FRANCOIS or her staff. When the Plaintiff attempted to address Pastor Robinson's accusations, Assistant Chief Gause, secretly invited by the pastor, instructed Major Ramos to “make me shut up.”

54. The following day, Major Ramos advised LEWIS FRANCOIS that defending herself was “confrontational” and she should allow Pastor Robinson to spread false information.

55. It became evident that both Assistant Chief Gause and Major Ramos were not interested in the truth and were there to create a narrative that served their agenda as directed by Chief Morales.

56. On Friday, January 21, 2022, LEWIS FRANCOIS attended a meeting at the central district station training office with Major Eric Gonzalez and Major Um Set Ramos.

57. During this meeting, it was explained to LEWIS FRANCOIS that Interim Chief Morales and Assistant Chief Gause had discussed how to “proceed” with her.

58. LEWIS FRANCOIS was informed she would be placed under review to see if she would be placed on a 90-day performance plan, but no prior documentation addressing any alleged performance deficiencies had been provided.

59. Over the next 45 days, Major Um Set Ramos conducted a performance evaluation investigation without providing LEWIS FRANCOIS or her previous supervisors with any relevant information.

60. From January 21, 2022, to March 15, 2022, Major Ramos evaluated LEWIS FRANCOIS

while shadowing her at events and critical incidents.

61. Major Ramos sought negative feedback about LEWIS FRANCOIS from her constituents through calls, texts, and side conversations, causing concern among community members.

62. One community member in South Grove questioned Major Ramos about his behavior, to which he replied, “I think she is a great Commander; I can't find anything wrong with her. The ones above me are making me do this.”

63. On Tuesday, April 12, 2022, after a weekly South District meeting, Major Ramos invited LEWIS FRANCOIS to meet with Major Eric Gonzalez.

64. Major Gonzalez presented LEWIS FRANCOIS with an amended yearly evaluation that he was instructed to modify because Chief Morales was dissatisfied with the original version she had signed.

65. Major Ramos concluded his evaluation by stating, “I find little evidence to support the Commander's seven alleged performance deficiencies.”

66. However, he recommended additional monitoring of LEWIS FRANCOIS’ operational decisions and interactions with community members.

67. During the meeting, Major Ramos told LEWIS FRANCOIS that no matter her performance, Chief Morales would not relent and suggested scheduling a meeting with him to “clear” the air.

68. Plaintiff LEWIS FRANCOIS felt intimidated and cornered as a Black female staff member, recognizing that her dedication to the Miami Police Department was unappreciated and that Chief Morales, with help from Major Ramos and Assistant Chief Gause, was intent on undermining her.

69. On Wednesday, May 4, 2022, LEWIS FRANCOIS was scheduled to meet with Assistant

Chief Gause, believing it would be a discussion about her area.

70. Upon arrival, she was informed they were waiting for Major Ramos.

71. During the meeting, LEWIS FRANCOIS was presented with another 90-day performance plan starting May 4, 2022.

72. Assistant Chief Gause stated, "This is out of my hands, and it is a pending item on my desk that needed to be resolved."

73. Gause further suggested that LEWIS FRANCOIS meet with Chief Morales to make the situation "go away" and assured her that she would be fine.

74. On Friday, May 20, 2022, LEWIS FRANCOIS raised concerns about a stipulation of the 90-day performance plan assigned by Major Ramos.

75. Major Ramos had designated Dr. Richard Holton as her assessor, despite the Plaintiff's concerns about a conflict of interest due to Holton's history with the Training Center and as a resident of Coconut Grove.

76. On Tuesday, May 31, 2022, Major Ramos scheduled a meeting with Dr. Holton despite the Plaintiff's objections, but the meeting was ultimately canceled on June 1, 2022.

77. LEWIS FRANCOIS was informed that she would be evaluated by Lisa Gilbert, a hired Behavioral Analyst from "No Nonsense Training," which raised further concerns since she was not a licensed therapist.

78. LEWIS FRANCOIS was subjected to a written evaluation in survey by her peers, team, colleagues, superiors and community members on two occasions spearheaded by Major Ramos. This is was the first of its kind and no other staff member had to endure such scrutiny and embarrassment.

79. It became clear that the evaluation was intended to convince LEWIS FRANCOIS to meet

with Morales rather than genuinely address workplace issues. Coach Lisa Gilbert offered on several occasions to accompany LEWIS FRANCOIS up until the final day of the evaluation period to meet with Chief Morales.

80. On Tuesday, July 19, 2022, LEWIS FRANCOIS received a reprimand from Major Ramos for failing to report an incident and not obeying orders in the presence of Commander Ellington.

81. Major Ramos admitted he did not recall the incident but offered FRANCOIS the opportunity to write a rebuttal.

82. However, he provided a preliminary copy of the reprimand without the last page detailing potential penalties, which included an eight-hour suspension.

83. LEWIS FRANCOIS submitted a rebuttal through the chain of command, but no updates on the reprimand's status were received.

84. During a City of Miami Civil Service Hearing in April 2024 where LEWIS FRANCOIS challenged the reprimand and suspension of hours, the Civil Service Chair advised Major Ramos that the reprimand and suspension of hours was egregious, inflated with charges and not warranted for a Police Executive. Furthermore, the Chair also expressed dissatisfaction for Major Ramos actions and own negligence regarding the incident.

85. On Friday, September 2, 2022, at approximately 8:50 AM, LEWIS FRANCOIS received a text from Major Ramos instructing her to meet with Chief Gause at 9:45 AM.

86. Although she was scheduled for a city physical, LEWIS FRANCOIS attended the meeting and was redirected to Chief Morales's conference room.

87. Upon entering, LEWIS FRANCOIS found Assistant City Attorney Juan Carlos Perez present, indicating that a demotion was imminent.

88. LEWIS FRANCOIS was targeted again and served with another reprimand for disobedience and for not adhering to the department's grooming / appearance policy, with no discussion about the specifics of the reprimand.

89. Major Ramos provided LEWIS FRANCOIS with a report from her 90-day performance plan that selectively highlighted negative interactions prior to the plan and reprimands that were conveniently authored during the 90 day period.

90. After Major Ramos left, Chief Morales entered, displaying a lack of regard by sitting sideways in his chair.

91. Morales presented LEWIS FRANCOIS with a memorandum returning her to her civil service classification as a Police Lieutenant and a justification memo.

92. LEWIS FRANCOIS was told she could write a rebuttal if she wished, but she felt that prior rebuttals had been ignored.

93. After the interaction and before the Plaintiff could reach her car, Chief Morales sent out a notification regarding her demotion.

94. LEWIS FRANCOIS was not given the opportunity to inform her staff of what had transpired.

95. Commander Lozano (white Hispanic male) contacted LEWIS FRANCOIS' support Sergeant during the demotion process to direct her staff to meet with Major Ramos.

96. To further exacerbate the situation, Chief Morales texted a Coconut Grove resident to inform her of the Plaintiff's demotion, despite previously assuring her that LEWIS FRANCOIS would not be demoted.

97. Morales claimed he had done everything he could to "save" the Plaintiff but ultimately stated he had to do what was best for the department.

98. On Friday, September 2, 2022, without any warning or review, she was served with an outrageous reprimand and demoted by Chief Manuel A. Morales, a white Hispanic male.

99. An unsanctioned evaluation was launched against her dating back to November 2021, which was not executed on any other executive member of the Miami Police Department, conducted by Major Um Set Ramos, also a white Hispanic male.

100. This evaluation was carried out in an unethical and coercive manner that undermined her leadership among her subordinates and colleagues.

101. She endured a period of persecution lasting 290 days, during which no other staff members of the opposite sex or race experienced similar treatment.

102. On January 23, 2023, a meeting was held with City Manager Art Noriega. Present in the meeting was Plaintiff LEWIS FRANCOIS and her PBA Attorney Griska Mena, PBA Attorney Andrew Axelrad. Present from the City of Miami was Attorney Stephanie Panoff, Attorney George Wysong, and Equal Opportunity and Diversity Liaison (EODP) Asseline Hypollite. Also present was Lieutenant Brandon Lanier and Officer Wanda Jean-Baptiste. During this meeting Plaintiff FRANCOIS participated in verbally blowing the whistle to the City Manager of the malfeasance of Chief Morales to include (Abusive Power, Discrimination, Retaliation, Harassment, Hostile Work Environment, Untruthfulness, Excessive Discipline). During this meeting City Manager Noriega advised Plaintiff LEWIS FRANCOIS and all parties involved that he would look into these concerns and advise of his findings. This whistle-blowing act was memorialized in a follow-up city email to the City Manager and all persons present. To date (21 months later), the City Manager has not investigated the allegations or provided a response to Plaintiff LEWIS FRANCOIS.

103. On March 28, 2024, Chief Morales was deposed by Attorney Michael Pizzi. During this

deposition Chief Morales was asked about the meeting with the City Manager on January 23, 2024, the allegations mentioned about his conduct, and the content of the follow up email. Chief Morales was specifically asked "what was done by the City or by you to investigate these allegations" at which time Chief Morales confirmed that he does not know what the City Manager has done, but he himself has done nothing.

104. Chief Morales's administration tarnished her career through this series of events, which have impacted her relationships with agencies outside of this department that she normally works with.

105. She was abruptly removed from her position, faced a significant pay cut, and experienced strain in her personal and professional life.

106. Disparaging comments regarding past incidents continue to affect her, even under the supervision of Major Daniel Garrido, another white Hispanic male and Commander Kimberly Caruso (white female)

107. She is a victim of disparate treatment and discrimination based on her race, sex, and nationality.

108. Plaintiff was subjected to a hostile work environment that was severe and pervasive and altered her work environment.

109. Plaintiff was mistreated because she a is a Black Bahamian-Haitian female.

110. White and Hispanic officers who were similarly situated and who committed transgressions were not disciplined and received better treatment.

111. Plaintiff was retaliated against because she complained about violations of Title VII.

112. She has also faced retaliation for opposing this discrimination, all of which violate Title VII of the Civil Rights Act of 1964, as amended.

**COUNT I**
**DISCRIMINATION BASED ON RACE**
**IN VIOLATION OF TITLE VII**

113. Plaintiff re-alleges paragraphs 1 through 112 as if fully set forth herein.

114. Plaintiff is a Black Haitian-Bahamian American female.

115. She was discriminated against and demoted because of her race.

116. As a direct and proximate result, Plaintiff has suffered permanent damages.

**WHEREFORE,** Plaintiff demands judgment for damages against the City, including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

**COUNT II**
**DISCRIMINATION BASED ON ETHNICITY (HAITIAN BAHAMIAN)**
**IN VIOLATION OF TITLE VII (HOSTILE WORK ENVIRONMENT)**

117. Plaintiff re-alleges paragraphs 1 through 112 as if fully set forth herein.

118. Plaintiff is a Black Haitian-Bahamian American female.

119. She was discriminated against and demoted because of her ethnicity.

120. The City subjected the Plaintiff to a hostile work environment.

121. The City subjected the Plaintiff's to employment conditions in a manner that was so severe and pervasive that they altered her work conditions to cause her emotional distress.

122. As a direct and proximate result, Plaintiff has suffered permanent damages.

**WHEREFORE,** Plaintiff demands judgment for damages against the City, including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available

relief as the Court deems just and proper.

**COUNT III**
**RETALIATION**

123. Plaintiff adopts and re-alleges Paragraphs 1 through 112 above as if fully set forth herein.

124. Plaintiff was subjected to retaliation in violation of Title VII of the Civil Rights Act of 1964 following her opposition to discriminatory practices.

125. Plaintiff endured 290 days of undue scrutiny and harassment, which was not experienced by peers of different sex or race, creating a hostile work environment.

126. Plaintiff experienced abrupt demotion and significant reduction in pay occurring after she raised concerns about discrimination.

127. Plaintiff remains experiencing continuous disparaging remarks and targeted actions by Morales and supervisory staff contributing to a hostile work environment, violating the protections afforded by Title VII.

**WHEREFORE,** Plaintiff demands judgment for damages against the City, including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

**COUNT IV**
**DISCRIMINATION BASED ON GENDER**
**IN VIOLATION OF TITLE VII**

128. Plaintiff re-alleges paragraphs 1 through 112 as if fully set forth herein.

129. Plaintiff is a Black Haitian-Bahamian American female.

130. She was discriminated against and demoted because of her gender.

131. As a direct and proximate result, Plaintiff has suffered permanent damages.

**WHEREFORE**, Plaintiff demands judgment for damages against the City, including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

**COUNT V**
**FLORIDA CHAPTER 112.3187 RETALIATION**

132. Plaintiff re-alleges paragraphs 1 through 112 as if fully set forth herein.

133. Plaintiff engaged in protected activity under Florida Statute 112.3187

134. Plaintiff reported malfeasance and misfeasance, participated in investigations and refused to participate in improper adverse action, all protected activities under F.S. 112.3187

135. In direct retaliation for her protected activities, the Plaintiff was subjected to adverse action.

**WHEREFORE,** Plaintiff demands judgment for damages against the City, including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

**MICHAEL A. PIZZI, JR., ESQ.**
Florida Bar No. 079545
6625 Miami Lakes Drive, Suite 316
Miami Lakes, Florida 33014
Phone: (786) 594-3948
Fax: (305) 777-3802
E-mail: mpizzi@pizzilaw.com

By: S/ *Michael A. Pizzi, Jr.*
**MICHAEL A. PIZZI, JR., ESQ.**