UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-23943-CIV-ALTONAGA/Reid

**WESLYNE LEWIS FRANCOIS**,

    Plaintiff,
v.

**CITY OF MIAMI**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, City of Miami's Motion for Summary Judgment [ECF No. 36], filed along with a Statement of Undisputed Material Facts ("Def.'s SOF") [ECF No. 35], on July 29, 2025. Plaintiff, Weslyne Lewis Francois filed an Amended Response ("Resp.") [ECF No. 47] and a Response to Defendant's Statement of Undisputed Material Facts and Statement of [Additional] Material Facts [ECF No. 48] ("Pl.'s Resp. SOF"). Defendant filed a Reply [ECF No. 55] and a Reply to Plaintiff's Statement of [Additional] Material Facts [ECF No. 53] ("Def.'s Reply SOF"). The Court has reviewed the parties' written submissions, the record, and applicable law.

## I. BACKGROUND

Plaintiff is a Black Haitian Bahamian woman and an 18-year employee of the City of Miami Police Department. (*See* Pl.'s Resp. SOF ¶¶ 136, 141; Def.'s Reply SOF ¶¶ 136, 141 (disputed on other grounds)). She was promoted to commander in January 2020. (*See* Def.'s SOF ¶ 3; Pl.'s Resp. SOF ¶¶ 3, 138; Def.'s Reply SOF ¶ 138). On September 2, 2022, Chief of Police Manuel Morales demoted her to lieutenant. (*See* Def.'s SOF ¶¶ 1, 3; Pl.'s Resp. SOF ¶¶ 1, 3).

CASE NO. 24-23943-CIV-ALTONAGA/Reid

Plaintiff contends that events leading to her demotion, and the demotion itself, reflect unlawful discrimination and retaliation. (*See generally* Compl. [ECF No. 1]; Pl.'s Resp. SOF, Ex. 1, Pl.'s Am. Sworn Decl. ("Pl.'s Aff.") [ECF No. 48-1]). Without recounting the full record, the Court sets out relevant facts below.

The discrimination allegedly began with comments Morales made to Plaintiff. (*See generally* Compl.). Morales criticized Plaintiff's hairstyle at least four times — including during a February 2020 phone call, when he told her to "tone her hair down[.]" (Def.'s SOF ¶ 23 (alteration added); *see id.* ¶¶ 21–22; Pl.'s Resp. SOF ¶¶ 21 (disputed on other grounds), 22, 23 (disputed on other grounds)). Between 2020 and 2021, Morales made five to ten additional comments and gestures Plaintiff interpreted as being about her hair. (*See* Def.'s SOF ¶ 21; Pl.'s Resp. SOF ¶ 21 (disputed on other grounds)). According to Plaintiff, Morales also compared her hairstyle unfavorably to that of Bianca Joseph, another Black Haitian female commander; referred to Plaintiff as "Bianca" five to ten times; and joked about Plaintiff using a voodoo doll. (*See* Def.'s SOF ¶¶ 17, 20; Pl.'s Resp. SOF ¶¶ 17, 20 (disputed on other grounds), 143; Def.'s Reply SOF ¶ 143 (disputed)). Plaintiff "objected to" Morales'[s] behavior and told him he was violating anti-discrimination laws. (Pl.'s Aff. ¶ 145 (alteration added)).

Other incidents involve discipline that Plaintiff maintains was pretextual. (*See generally* Compl.). For instance, in November 2021, Morales reprimanded Plaintiff and removed her from the Honor Guard — a voluntary detail responsible for ceremonial flag presentations — for failing to fill a staffing request on short notice. (*See* Def.'s SOF ¶¶ 39–42; Pl.'s Resp. SOF ¶¶ 39–42 (disputed on other grounds)). Plaintiff asserts she was on a pre-approved vacation and substantially met the request. (*See* Pl.'s Resp. SOF ¶¶ 41–42). In another incident, a supervisor reprimanded her for not responding to an incident while she was injured. (Pl.'s Resp. SOF ¶¶ 171–

73; Def.'s Reply SOF ¶¶ 171–73 (all disputed on other grounds)). By contrast, a male officer also did not respond but was not reprimanded. (*See* Pl.'s Resp. SOF ¶¶ 173, 175; Def.'s Reply SOF ¶¶ 173, 175 (both disputed on other grounds)).

In early 2022, Major Um Set Ramos transferred to Plaintiff's district and became her supervisor. (*See* Def.'s SOF ¶ 62; Pl.'s Resp. SOF ¶ 62). Plaintiff was aware of an allegation that Ramos had used a racial slur while working as a police sergeant. (*See* Def.'s SOF ¶ 63; Pl.'s Resp. SOF ¶ 63; *see also id.*, Ex. 2, July 25, 2022 Civilian Investigative Panel Letter (sustaining the allegation)). She complained to Ramos that she was being targeted based on race, gender, and ethnicity. (*See* Pl.'s Aff. ¶ 242).

Later, on Morales's staff's orders, Ramos reprimanded Plaintiff twice. (*See* Def.'s SOF ¶¶ 55, 108, 110; *see generally* Def.'s SOF, Sept. 2, 2022 Reprimand [ECF No. 35-4]; *see also* Pl.'s Resp. SOF ¶¶ 55, 108, 110 (all disputed on other grounds); *id.*, Ex. 5, Ramos Dep. Tr. [ECF No. 48-5] 16:6–13).[1] One reprimand carried a ten-hour suspension that was unanimously reversed by the Civilian Review Board. (*See* Def.'s SOF, Ex. 16, July 19, 2022 Reprimand [ECF No. 35-16]). Ramos testified that leadership had never before directed him to reprimand an officer. (*See* Ramos Dep. Tr. 18:3–20). And according to Plaintiff, white, and Hispanic male officers in leadership positions were reprimanded, but not suspended, for violations more severe than any she was accused of. (*See* Pl.'s Resp. SOF ¶¶ 244–50; Def.'s Resp. SOF ¶¶ 244–49 (all disputed on other grounds)).

After these reprimands, Morales placed Plaintiff on a 90-day action plan under the supervision of a third-party trainer. (*See* Def.'s SOF ¶¶ 84, 88; Pl.'s Resp. SOF ¶¶ 84 (disputed

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to deposition testimony rely on the pagination and line numbering in the original document.

on other grounds), 88). According to Morales, he imposed the plan because Plaintiff's personality "inhibited the chemistry of the executive staff." (Def.'s SOF ¶ 84; Pl.'s Resp. SOF ¶ 84 (disputed)). Defendant maintains Plaintiff did not complete the plan, and it cites that failure — and the reprimands — as reasons for her demotion. (*See* Def.'s SOF ¶ 5; Pl.'s Resp. SOF ¶¶ 5 (disputed), 231; *see generally id.*, Ex. 24, Aff. of Lisa Gilbert ("Gilbert Aff.") [ECF No. 35-24]; *see also* Def.'s Reply SOF ¶ 231 (disputed on other grounds)).

Plaintiff states five claims for relief: disparate-treatment discrimination, based on race and gender, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") (Counts I and IV) (*see* Compl. ¶¶ 113–16, 128–31); hostile-work-environment discrimination under Title VII (Count II) (*see* Compl. ¶¶ 117–22); retaliation under Title VII ("Count III") (*see* Compl. ¶¶ 123–27); and retaliation under Florida's Whistleblower Act, section 112.3187, Florida Statutes (Count V) (*see* Compl. ¶¶ 132–35). Defendant moves for summary judgment on each count (*see generally* Mot.), and Plaintiff insists material facts are disputed (*see generally* Resp.).

## II. LEGAL STANDARD

Summary judgment is appropriate if the pleadings, discovery materials, and any affidavits show there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (citation omitted).

Where, as here, the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment either by (1) affirmatively establishing that no genuine dispute exists as to any essential element of the non-moving party's claim or (2) showing that there is an absence of evidence in the record to support that element. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14208-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (alteration added; quotation marks omitted; quoting Fed. R. Civ. P. 56(c)(1)).

### III.  DISCUSSION

**A.  Disparate-Treatment, Retaliation, and Whistleblower Claims (Counts I, III–V)**

To begin, Defendant's requests for summary judgment on Plaintiff's Title VII disparate-treatment and retaliation claims and her Florida Whistleblower Act claim do not merit discussion. Plaintiff has presented "circumstantial evidence that creates a triable issue concerning [Defendant's] discriminatory intent." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (alteration added; quotation marks and citation omitted); *see also Copeland v. Ga. Dep't of Corrs.*, 97 F.4th 766, 783 n.9 (11th Cir. 2024) (citation omitted). And the parties' filings confirm that undisputed facts, like Morales's comments and Plaintiff's demotion — as well as key factual disputes, such as whether discipline was pretextual — preclude summary judgment on other elements of the claims. (*See generally* Mot.; Resp.; Reply); *see also, e.g.*, *Keen v. Reg'l Emergency Med. Servs. of Georgia, Inc.*, 913 F. Supp. 2d 1374, 1381 (M.D. Ga. 2012); *Spencer v. Reg'l Acceptance Corp.*, No. 05-60292-Civ, 2006 WL 4590707, at *1 (S.D. Fla. Jan. 10, 2006) (citation omitted). Consequently, Defendant's Motion is denied as to Counts I and III–V.

### B. Hostile-Work-Environment Claim (Count II)

Regarding Count II, the Court agrees with Defendant that Plaintiff has not produced sufficient evidence to support her Title VII hostile-work-environment claim. (*See* Mot. 12–16; Compl. ¶¶ 117–22). To prevail on this claim, Plaintiff must show she was subjected to unwelcome harassment based on a protected characteristic and that the harassment, viewed objectively, was sufficiently severe or pervasive to alter the terms and conditions of employment. *See Smith v. Naples Cmty. Hosp., Inc.*, 433 F. App'x 797, 799 (11th Cir. 2011) (citation omitted).

Four factors are relevant to whether harassment objectively alters an employee's terms or conditions of employment: the conduct's (1) frequency; (2) its severity; (3) whether it was physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interfered with the employee's job performance. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999) (citation omitted). The conduct must be evaluated "in context, not as isolated acts[.]" *Id.* (alteration added; citations omitted).

Applying this standard, courts have held that humiliating and derogatory remarks based on protected characteristics were not sufficiently severe or pervasive when they were "isolated and sporadic[,]" occurring over months or years rather than daily or weekly, *Corbett v. Beseler*, 635 F. App'x 809, 816 (11th Cir. 2015) (alteration added) — even in the context of racially derogatory language, *see McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008); *see also Barrow v. Georgia Pac. Corp.*, 144 F. App'x 54, 58 (11th Cir. 2005) (discussing a hostile-work-environment claim brought under 42 U.S.C. section 1981); *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (noting that hostile-work-environment claims brought under section 1981 and Title VII are "subject to the same standards of proof and employ the same analytical framework" (citation omitted)).

As with these cases, the conduct Plaintiff describes — viewed in the light most favorable to her — is not sufficiently severe or pervasive under the applicable standard. Plaintiff asserts that over roughly two years of employment, Morales made between ten and fifteen comments about her hair, called her "Bianca" five to ten times, and made one remark about a voodoo doll. (*See* Def.'s SOF ¶¶ 17, 20, 21–23; Pl.'s Resp. SOF ¶¶ 17, 20 (disputed on other grounds), 21 (disputed on other grounds), 22, 23 (disputed on other grounds); Def.'s Reply SOF ¶ 143 (disputed)). Over the same period, Defendant subjected Plaintiff to several allegedly pretextual disciplinary actions. Even if each of these actions qualifies as harassment based on ethnicity, the actions are too isolated and sporadic to alter the terms and conditions of employment. *See Corbett*, 635 F. App'x at 816; *see also Small v. City of Hollywood*, 661 F. Supp. 3d 1187, 1200 (S.D. Fla. 2023) ("Three comments made during a period of over three months is infrequent." (citations omitted)). As Plaintiff has not met her burden to show a genuine dispute of material fact on this threshold requirement, summary judgment on Count II is appropriate.

## IV.  CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant, City of Miami's Motion for Summary Judgment **[ECF No. 36]** is **GRANTED in part** and **DENIED in part**. Summary judgment is granted in favor of Defendant on Count II of the Complaint [ECF No. 1].

**DONE AND ORDERED** in Miami, Florida, this 25th day of September, 2025.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record